

CLERK'S OFFICE
A TRUE COPY
Feb 22, 2021
s/ Jeremy Heacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>8 Google accounts | )<br>)<br>)<br>)<br>)<br>) |

Case No. **21-M-334 (SCD)**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 846, 841(a)(1), 841 (h), and 843(c)(2)(A) | distribution of a controlled substance, possession with intent to distribute a controlled substance, internet distribution of controlled substances, and conspiracy to do the same |

The application is based on these facts:

See the attached affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

SCOTT SIMONS (Affiliate) Digitally signed by SCOTT SIMONS (Affiliate)
Date: 2021.02.22 14:34:39 -06'00'

*Applicant's signature*

Scott Simons, Task Force Officer (DEA)

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date: ___02/22/2021___

*Judge's signature*

City and state: Milwaukee, Wisconsin

Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Scott Simons, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search warrant for information associated with certain Google accounts that is stored at premises owned, maintained, controlled, or operated by Google, Inc. ("Google"), a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computer service, as defined in 18 U.S.C. § 2711(2), headquartered at 1600 Amphitheatre Parkway, Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government records and information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.     I am a Task Force Officer assigned to the Milwaukee District Office of the Drug Enforcement Administration (DEA) as a member of the Tactical Diversion Squad (TDS). I specialize in pharmaceutical investigations. I have worked full-time as a federal task force officer for the past 7 years and a full-time law enforcement officer with the Greenfield Police Department for the past 18 years. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3.      During my tenure as a law enforcement officer, I have been involved in the investigation of drug traffickers in Milwaukee County, in the State of Wisconsin, across the United States, and internationally. I have received training in the investigation of drug trafficking, money laundering, and computer crimes. I have worked with informants in the investigations of drug trafficking. I have participated in the application for and execution of numerous search warrants. I have participated directly in numerous narcotics investigations and arrests in which controlled substances and drug paraphernalia were seized. I am familiar with methods that are commonly used by drug traffickers to package and prepare controlled substances for sale.

4.      The statements in this affidavit are based on my personal knowledge, information I have received from other law enforcement personnel, publicly available information, and from persons with knowledge of relevant facts. Because this affidavit is submitted for the limited purpose of securing a search warrant, I have not included every fact known to me concerning this investigation.

5.      Based on the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that the information associated with the accounts identified in Attachment A, will contain evidence and instrumentalities related to violations of Title 21, United States Code, Sections 846 (conspiracy to distribute and possess with the intent to distribute a controlled substance), 841(a)(1) (distribution of a controlled substance), 841(h) (distribution of a controlled substance by means of the Internet), and 843(c)(2)(A) (use of the Internet to advertise or offer the sale of a controlled substance), as further described in Attachment B.

## STATUTORY BACKGROUND

6.      The Ryan Haight Online Pharmacy Consumer Protection Act of 2008 amended the Controlled Substances Act to address online pharmacies, codified at Title 21, United States Code,

Section 829. No controlled substance that is a prescription drug as determined by the Federal Food, Drug and Cosmetic Act may be delivered, distributed, or dispensed by means of the Internet without a valid prescription, as required by Title 21, Code of Federal Regulations, Section 1306.09(a). According to Section 829, the term "valid prescription" means a prescription that is issued for a legitimate medical purpose in the usual course of professional practice by a practitioner who has conducted at least 1 in-person medical evaluation of the patient or a covering practitioner. The term "in-person medical evaluation" means a medical evaluation that is conducted with the patient in the physical presence of the practitioner, without regard to whether portions of the evaluation are conducted by other health professionals. The term "covering practitioner" means, with respect to the patient, a practitioner who conducts a medical evaluation (other than an in-person medical evaluation) at the request of a practitioner who has conducted at least 1 in-person medical evaluation of the patient or an evaluation of the patient through the practice of telemedicine within the previous 24 months and is temporarily unavailable to conduct the evaluation of the patient.

7.     The Ryan Haight Online Pharmacy Consumer Protection Act of 2008 also added new provisions to prevent the illegal distribution of controlled substances by means of the Internet, including registration requirements of online pharmacies, Internet pharmacy website disclosure information requirements, and prescription reporting requirements for online pharmacies.

**PROBABLE CAUSE**

8.     In 2015, the Milwaukee District Office of the DEA initiated an investigation into the internet pharmacy GOLDPHARMA24 located at www.goldpharma-24.com, which advertised controlled and non-controlled pharmaceuticals for sale without requiring a prescription. During the course of the investigation of GOLDPHARMA24, case agents identified a co-conspirator in

Florida (hereinafter referred to as "SOI-1") and a co-conspirator in Texas (hereinafter referred to as "SOI-2"). These two co-conspirators were working together to receive bulk shipments of controlled pharmaceuticals and reship them to customers throughout the United States. Case agents interviewed these two co-conspirators and executed federal search warrants at their residences. These co-conspirators identified multiple drug suppliers, Google email accounts, and WhatsApp accounts used by their drug suppliers to conduct drug transactions.

9.     Case agents began this investigation into the drug suppliers using PILL2DAYS, BUYETIZOLAM, and PREMIER MEDICAL AGENCY based on evidence acquired from the cooperating co-conspirators. Case agents conducted multiple controlled buys and communicated with the drug suppliers, including by the Google email accounts and WhatsApp accounts belonging to those drug suppliers. According to DEA records, PILL2DAYS, BUYETIZOLAM, and PREMIER MEDICAL AGENCY are not registered online pharmacies. As described below, probable cause exists to believe that the Google email accounts identified in Attachment A were used to facilitate the offenses described above.

10.     An undercover agent in the Eastern District of Wisconsin purchased controlled pharmaceuticals numerous times from SOI-1 and SOI-2 between July 2019 and August 2020. The primary method of communication between the undercover agent and SOI-1 was via WhatsApp. Subsequent analysis of these suspected controlled substances by the DEA laboratory, identified controlled substances including heroin, methamphetamine, ketamine, tramadol, diazepam, alprazolam, and modafinil.

11.     In August 2020, case agents executed federal search warrants in Florida and Texas at the residences of SOI-1 and SOI-2. Case agents seized electronic devices and documents containing evidence identifying many of the drug suppliers and customers, communication related

to the sale of controlled substances, and money laundering of drug proceeds. Case agents also seized approximately $100,000 in drug proceeds and different types of suspected controlled pharmaceuticals. Case agents have had the opportunity to interview SOI-1 and SOI-2 multiple times about the various drug suppliers and the circumstances around communication with the suppliers and drug payments to the suppliers.

12.     SOI-1 said that he began as a payment processor. In June 2018, SOI-1 was contacted online by the co-owners of the online pharmacies www.buyetizolam.com ("BUYETIZOLAM") and www.compratapentadol.com ("COMPRATAPENTADOL"). According to SOI-1, BUYETIZOLAM sells etizolam (an unapproved drug in the United States) and modafinil (a Schedule IV controlled substance), and COMPRATAPENTADOL sells tapentadol (a Schedule II controlled substance), modafinil (a Schedule IV controlled substance), tramadol (a Schedule IV controlled substance), and carisoprodol (a Schedule IV controlled substance). SOI-1 said that at least 98% of their sales are to customers in the United States. SOI-1 processed payments for all the orders placed on these websites, and SOI-1 provided cases agents with a list of all these orders, which included the identity of the customer, address of the customer, and amount paid for the drugs. SOI-1 identified the primary drug supplier for these websites as AKSHAY SAKODE, who is the owner of India-based distributor, PREMIER MEDICAL AGENCY. SOI-1 was directed to forward half of the processed drug payments to the owners of these websites and the other half to AKSHAY SAKODE. In total, SOI-1 transferred in excess of $1,000,000 in U.S. currency in drug proceeds to bank accounts belonging to AKSHAY SAKODE and bank accounts belonging to the owners of the websites.

13.     SOI-1 stated there are three co-owners of BUYETIZOLAM and COMPRATAPENTADOL. SOI-1 told the owners that he would not do business with them unless

they were open with him about the operation. SOI-1 identified the owners as the following:

- DAVID PIERRE LETTINGA – 40% owner

- KEVIN VAN DER HULST – 40% owner

- Ben – 20% owner.

14.    SOI-1 primarily communicated with LETTINGA, who is an equal owner with VAN DER HULST. SOI-1 communicated with LETTINGA, via WhatsApp at phone number **+34-691962857**, and email address **tinuschicken@gmail.com**. SOI-1 sent the majority of the drug proceeds to LETTINGA's personal bank account in Germany. LETTINGA is a citizen of the Netherlands, but resides in Spain. SOI-1 maintained an Excel spreadsheet file of all drug payments that SOI-1 processed for BUYETIZOLAM and COMPRATAPENTADOL, and saved this Excel file in Google Drive. LETTINGA had access to this file by using the email account tinuschicken@gmail.com. In addition, SOI-1 communicated with LETTINGA about drug orders, drug proceeds, and other drug business at email address **tinuschicken@gmail.com** and WhatsApp phone number **+34-691962857.**

15.    SOI-1 reported that VAN DER HULST was primarily in charge of the technical side of the drug conspiracy by creating and maintaining the online pharmacy websites. SOI-1 communicated with VAN DER HULST by telephone and email, via email address at **kevinvanderhulst@gmail.com,** several times and also sent drug proceeds to VAN DER HULST's personal bank account in the Netherlands, where VAN DER HULST resides. SOI-1 communicated with VAN DER HULST at email address **kevinvanderhulst@gmail.com** regarding the payment of drug proceeds to VAN DER HULST and the processing of drug payments for the websites, BUYETIZOLAM and COMPRATAPENTADOL.

16.     The third owner of BUYETIZOLAM and COMPRATAPENTADOL is only known by SOI-1 as "Ben." Ben taught LETTINGA and VAN DER HULST how to run an illegal online pharmacy business. Ben is a 20% owner, owns additional online pharmacies, and is not engaged in the day-to-day operations with BUYETIZOLAM and COMPRATAPENTADOL. SOI-1 believes Ben resides in Holland.

17.     BUYETIZOLAM and COMPRATAPENTADOL websites are supplied by Indian pharmaceutical distributor PREMIER MEDICAL AGENCY, which is owned by AKSHAY SAKODE. SOI-1 would transfer half of the drug proceeds to LETTINGA and VAN DER HULST and the other half to SAKODE's bank account in India. SOI-1 also utilized PREMIER MEDICAL AGENCY as SOI-1's drug supplier for regular bulk drug shipments to SOI-1's partner SOI-2 in Texas. These drug shipments were broken down and reshipped to U.S. customers.  SOI-1 stated some of these drugs were shipped to undercover case agents in the Eastern District of Wisconsin. SOI-1 communicated with SAKODE, via WhatsApp at phone number **+91-7304096699**, and Google email address **pmagencysales@gmail.com**. The communication with SAKODE via WhatsApp and email, consisted of communication related to drug orders and drug payments.

18.     SOI-1 identified another online pharmacy www.pill2days.com ("PILL2DAYS"), from which SOI-1 had purchased Xanax (a Schedule IV controlled substance) and suspected Adderall (a Schedule II controlled substance) in the summer of 2020. SOI-1 communicated with the website representative via email at email address **r.stewarts121514@gmail.com**. Case agents later reviewed these emails and saw the discussion of controlled substances being shipped from overseas to the United States, domestically from re-shippers located in the United States, prices, a drug photograph, and quantities. SOI-2 was responsible for sending the drug payment, so SOI-2

communicated with a website representative via telephone at a phone number known to be used by the online pharmacy PILL2DAYS.

19.     SOI-1 and SOI-2 were told by PILL2DAYS representatives that they ship pharmaceuticals from overseas to U.S. customers at the advertised prices on the website.  At a significantly higher price, U.S. customers can receive the drug parcels from domestic re-shippers they have established. SOI-1 stated he was aware of re-shippers in Arizona and Florida. Case agents were able to intercept and seize a parcel from PILL2DAYS to SOI-2, which was supposed to contain 360 tablets of Adderall. This parcel was shipped by a re-shipper in Vermont. These tablets were sent to the DEA laboratory, and found to contain 364 tablets of modafinil (a Schedule IV controlled substance).

20.     Case agents reviewed the PILL2DAYS online pharmacy website www.pill2days.com.  This website offers the following controlled substances for sale:

- Adderall – a Schedule II controlled substance

- Phentermine – a Schedule IV controlled substance

- Diazepam – a Schedule IV controlled substance

- Ativan – a Schedule IV controlled substance

- Klonopin – a Schedule IV controlled substance

- Xanax – a Schedule IV controlled substance

- Ambien – a Schedule IV controlled substance

- Soma (carisoprodol) – a Schedule IV controlled substance

- Tramadol - a Schedule IV controlled substance.

21.     SOI-1 and SOI-2 both identified a "broker" located in the United Kingdom, who was known as DAVE ADDISON JR.   ADDISON communicated about drug orders, drug

payments, and drug shipments, only via a WhatsApp account linked to phone number **+44-7490620584.** SOI-2 was the only one who communicated with ADDISON, but the drugs received from ADDISON were supplied to the customers belonging to both SOI-1 and SOI-2. Multiple types of controlled pharmaceuticals were purchased from ADDISON, received by SOI-2, and then reshipped to customers in the United States. SOI-1 and SOI-2 stated that the Adderall 30mg, which later tested positive for methamphetamine, and Percocet 10mg, which tested positive for methamphetamine, heroin, tramadol, and caffeine, which SOI-1 and SOI-2 shipped to undercover case agents during controlled purchases were supplied by ADDISON. All of these purchases from ADDISON were conducted by communicating via the WhatsApp account linked to phone number **+44-7490620584.** All drug payments were made via Bitcoin to different Bitcoin addresses provided by ADDISON via WhatsApp.

22.     SOI-1 and SOI-2 stated that ADDISON was just the broker taking the drug orders on behalf of a shipper located in the United Arab Emirates (UAE). Based on financial and shipping records reviewed by case agents, the drug parcels appear to be originating from Pakistan and then shipped through the UAE to the United States. SOI-1 and SOI-2 provided the identity of several other U.S. customers receiving drug shipments from ADDISON. SOI-1 and SOI-2 stated that once a drug parcel arrived and the drugs were damaged. SOI-2 told ADDISON that SOI-2 was going to return the drug parcel to ADDISON. ADDISON provided an address in London, United Kingdom and directed SOI-2 to ship the drugs to that location. SOI-2 and SOI-1 believe for this reason, and because ADDISON's phone number has a United Kingdom country code, that ADDISON is located in the United Kingdom. Case agents reviewed emails and SOI-2's cell phone and were able to confirm these details regarding ADDISON, including ADDISON's phone number **+44-7490620584.**

23.     SOI-1 and SOI-2 provided additional details related to the aforementioned drug suppliers, as well as other suppliers, and case agents were able to corroborate the information as true and accurate.

24.     On November 24, 2020, case agents began communicating with ADDISON via WhatsApp at phone number **+44-7490620584**. ADDISON messaged case agents a list of approximately 23 different medications for sale, including Percocet 10mg and Adderall 30mg. These are the same medications SOI-1 and SOI-2 purchased from ADDISON and reshipped to undercover agents. Case agents and ADDISON discussed shipping, drug quantities, and pricing. ADDISON stated that Bitcoin was the only accepted form of payment and provided additional details, which matched the information provided by SOI-1 and SOI-2. Case agents informed ADDISON that case agents operated a domestic reshipping operation in the United States. ADDISON solicited case agents to receive bulk parcels from ADDISON and reship the drugs to ADDISON's customers. Case agents informed ADDISON that this was a possibility in the future, but first case agents wished to become an established customer. This entire communication was conducted via the WhatsApp account linked to phone number **+44-7490620584.**

25.     On December 1, 2020, case agents conducted an undercover purchase from BUYETIZOLAM via the website. Case agents purchased 500 tablets containing a mixture of tapentadol 150mg (a Schedule II controlled substance) and etizolam 2mg (an unapproved drug in the United States). In connection with the purchase, case agents were directed via email to conduct a bank transfer to an account with TransferWise. Case agents received the shipment of the 500 tablets of the tapentadol and etizolam mixture in blister packs, which were shipped from India by the shipper PREMIER MEDICAL AGENCY. The medications were sent to the DEA laboratory in Chicago, and the test results are pending.

26.     Case agents later received records from TransferWise, pursuant to a DEA administrative subpoena, related to the customer account to which undercover agents sent the drug payment. This TransferWise account belongs to DAVID PIERRE LETTINGA in Spain. Records revealed that funds from this account were also transferred to another account listing to KEVIN VAN DER HULST.

27.     On December 1, 2020, case agents conducted an undercover purchase from PILL2DAYS via the telephone number (202) 753-9072, which is published on the website. Case agents purchased 180 tablets of Adderall 30mg (a Schedule II controlled substance). In connection with the purchase, case agents were directed via text message to conduct a bank transfer by Zelle to a bank account linked to the phone number (828) 215-5158 and the first name "Jawed." Case agents received the shipment of the 180 tablets of suspected Adderall 30mg, which was shipped from Vermont. The substances were sent to the DEA laboratory in Chicago, and the analysis revealed the presence of tramadol (a Schedule IV controlled substance).

28.     Case agents later received records from T-Mobile, pursuant to a DEA administrative subpoena, requesting records related to phone number (828) 215-5158. The records revealed that the account is registered to a specific address in Apex, North Carolina. Case agents accessed files available to the DEA and fully identified a resident at this address with the first name "Jawed" (hereinafter referred to as "SOI-3"). Case agents later confirmed SOI-3 is the person who received the drug payment.

29.     On December 11, 2020, case agents conducted an undercover purchase from PILL2DAYS, via the telephone number (202) 753-9072, which is published on the website. Case agents purchased 180 tablets of hydrocodone 10mg (a Schedule II controlled substance). In connection with the purchase, case agents were directed via text message to conduct a bank transfer

by Zelle, to a bank account linked to the email address info@vigordose.com and name "Annie Abraham." Case agents were sent the tracking number by text message and by email from **r.stewarts121514@gmail.com**. This email contained an email signature "Robbie Stewart – Sales Manager." Case agents received the shipment of the 180 tablets of suspected hydrocodone 10mg which was shipped from Green Bay, Wisconsin. The medication was sent to the DEA laboratory in Chicago, and the analysis revealed the presence of tramadol (a Schedule IV controlled substance).

30.     Case agents have identified "Annie Abraham" as ANNAMMA ABRAHAM, who is a suspected payment processor in New York. Case agents identified that the drug shipper located in Green Bay, Wisconsin also shipped an additional five parcels at the same time as the drug parcel received by case agents.

31.     On December 21, 2020, case agents conducted an undercover purchase directly from WhatsApp via Indian telephone number **+91-7304096699**. SOI-1 had identified this phone number as belonging to AKSHAY SAKODE, the owner of PREMIER MEDICAL AGENCY. Case agents purchased 2,000 tablets of tapentadol 100mg (a Schedule II controlled substance) and 1,000 tablets of modafinil (a Schedule IV controlled substance). In connection with the purchase, case agents were directed via WhatsApp message from **+91-7304096699** and email **pmagencysales@gmail.com**, to conduct a bank transfer to bank account PREMIER MEDICAL AGENCY in India. Case agents were emailed five tracking numbers from **pmagencysales@gmail.com** and further communicated with this email address about payment and the drug transaction. Many of these emails contained an email signature "AKSHAY SAKODE." Case agents have received one of the five parcels as of this time and are monitoring the tracking of the other parcels which are still in transit from India and Singapore. The received

parcel contained blister packs of approximately 600 tablets of tapentadol 100mg (a Schedule II controlled substance). The medication was sent to the DEA laboratory in Chicago, and the analysis results are pending. Case agents have further communicated with AKSHAY SAKODE about the status of the remaining drug parcels via WhatsApp phone number **+91-7304096699.**

  32. On January 11, 2021, case agents conducted an undercover purchase from PILL2DAYS via the telephone number (202) 753-9072, which is published on the website. Case agents purchased 90 tablets of hydrocodone 10mg (a Schedule II controlled substance), 90 tablets of Xanax 2mg (a Schedule IV controlled substance), and 180 tablets of tapentadol 100mg (a Schedule II controlled substance). In connection with the purchase, case agents initially asked to make payment via Bitcoin as a ruse to identify another method of accepted payment. Case agents were provided with a Bitcoin address via text message. Case agents then requested to change the payment method to Zelle. Case agents were directed, via text message, to conduct a bank transfer by Zelle to a bank account linked to the email address info@vigordose.com and name "Annie Abraham." Case agents were sent the tracking numbers by text message and by email from **r.stewarts121514@gmail.com**. This email contained an email signature "Robbie Stewart – Sales Manager." Case agents received the shipment of the 90 tablets of suspected hydrocodone 10mg which was shipped from Green Bay, Wisconsin, the shipment of the 90 tablets of suspected Xanax 2mg which was shipped from Salem, Oregon, and the shipment of the 180 tablets of tapentadol 100mg from the Bronx, New York. The medications were sent to the DEA laboratory in Chicago, and the analysis results are pending.

  33. Case agents received records from Coinbase, a cryptocurrency platform, pursuant to a DEA administrative Subpoena, related to the Bitcoin address provided to case agents for the sending of the drug payment. These records identify the account holder as KATHERINE

MAHANEY residing in Oakland, California and having phone numbers (510) 508-0345 and (202) 753-9072. The phone number (510) 508-0345 is the phone number linked to a bank account that SOI-2 sent drug payment to for a drug parcel in August 2020. The phone number (202) 753-9072 is the phone number published on the PILL2DAYS website and the same phone number case agents communicate with to place controlled purchases. Furthermore, case agents have identified additional financial accounts listing to KATHERINE MAHANEY which are receiving suspected drug payments. As a result, KATHERINE MAHANEY has been identified as a suspected payment processor. As of January 7, 2021, this Coinbase account held 0.42791853 Bitcoin valued at approximately $15,924.18 in U.S. dollars.

34. Case agents have extensively communicated with a PILL2DAYS representative who identified himself as "Michael," via text message at phone number (202) 753-9072. "Michael" has explained that he works in a call center in India, and the prices on the PILL2DAYS website are for drug parcels shipped from India. For an additional cost, the drug parcels can be shipped from one of the many domestic re-shippers that PILL2DAYS has established throughout the United States.

35. Case agents received records from J2Web Services, Inc., a VOIP telephone services, pursuant to a DEA administrative Subpoena, related to the phone number (202) 753-9072. These records identified the following account details:

- Created Date: June 3, 2020

- Name: Robbie Stewart

- Company Name: RX202

- Email address: r.stewart01@protonmail.com

- Creation IP address: 68.123.12.232 (linked to KATHERINE MAHANEY in Oakland, CA)

- Previous email: katmahaney@hotmail.com

- Forwarding number: (510) 508-0345 (linked to KATHERINE MAHANEY)

- Billing name: KATHERINE E. MAHANEY

- Billing address: 1039 Elbert St., Oakland, CA 94602 (residence of KATHERINE MAHANEY).

36.     Case agents also received text message content and voicemails from J2Web Services, Inc. Thousands of text messages and voicemails revealed numerous pharmaceutical drug transactions between the user of this telephone account and customers in the United States. Several payment methods, financial accounts, and co-conspirators were identified based on the content. It was observed that KATHERINE MAHANEY communicates regularly with the user of this telephone number (202) 753-907, she plays a financial role within the organization, and based on records is believed to be the person who created this telephone account. Case agents also observed a reference in a text message of "ASHUTOSH VAISH" in Lucknow, India.

37.     Case agents learned that the Federal Bureau of Investigation in Raleigh, North Carolina was investigating "SOI-3" for processing fraud payments. Case agents spoke with FBI Special Agent Harrison Putman, who said that the FBI had executed a search warrant on the personal residence of SOI-3 on December 3, 2020. Special Agent Putman reported that SOI-3 wished to speak with case agents about the PILL2DAYS's drug trafficking organization.

38.     On January 27, 2021, case agents met with SOI-3.

39.     SOI-3 stated that in approximately 2015 or 2016, he began working as a payment processor for the PILL2DAYS drug conspiracy, accepting payments in the form of credit and debit

cards, wire transfers such as Zelle, electronic checks, physical checks, PayPal, and Venmo. SOI-3 was initially informed by the leader of the drug conspiracy, ASHUTOSH VAISH, that the sales were for herbal substances. SOI-3 learned from customers in 2018 that the sales were for the following controlled substances:

- Ambien (a Schedule IV controlled substance)

- Valium (a Schedule IV controlled substance)

- Xanax (a Schedule IV controlled substance)

- Klonopin (a Schedule IV controlled substance)

- Tramadol (a Schedule IV controlled substance)

- Soma (a Schedule IV controlled substance)

- Adderall (a Schedule II controlled substance)

- Oxycodone (a Schedule II controlled substance)

- Hydrocodone (a Schedule II controlled substance).

40.     SOI-3 stated that ASHUTOSH VAISH is in charge of a call center in Lucknow, India, which handles all the orders, coordinates the Indian and domestic drug shippers, and coordinates the payment processors. SOI-3 has met ASHUTOSH VAISH in person in India in 2017 and 2018. Case agents showed SOI-3 known photographs of ASHUTOSH VAISH, and SOI-3 positively identified ASHUTOSH VAISH. In 2018, SOI-3 confronted ASHUTOSH VAISH about the types of drugs being sold, and ASHUTOSH VAISH admitted the drugs were all "hard drugs" and not herbal substances because "hard drugs" are more profitable.  ASHUTOSH VAISH explained to SOI-3 that ASHUTOSH VAISH has Indian shippers, but for a higher price for the customer, the drugs can be shipped from numerous re-shippers in the United States. SOI-3 identified the person who makes the websites for ASHUTOSH VAISH, as NICOLAS BIGNONE,

an Argentine national who lives in Argentina. SOI-3 was introduced to NICOLAS BIGNONE and communicates with him regularly. NICOLAS BIGNONE has told SOI-3 that NICOLAS BIGNONE creates the online pharmacy websites for ASHUTOSH VAISH and others. NICOLAS BIGNONE monitors the customer sales and is paid between $4,000 to $5,000 up front for every 100 sales. NICOLAS BIGNONE has had SOI-3 register a business in the U.S. in order for NICOLAS BIGNONE to open bank accounts in Miami, Florida which are used to receive the payments for creating the online pharmacy websites. SOI-3 primarily transfers drug payments directly to ASHUTOSH VAISH's bank account in India, but occasionally is instructed to transfer the funds to NICOLAS BIGNONE or other co-conspirators. SOI-3 received on average $20,000 to $25,000 in drug payments per month. SOI-3 said there are other payment processors throughout the United States, and SOI-3 was told by ASHUTOSH VAISH that ASHUTOSH VAISH receives $60,000 to $70,000 in drug payments per month. SOI-3 said that all customer payments he received were from customers in the United States.

41. SOI-3 was told by ASHUTOSH VAISH that ASHUTOSH VAISH uses the alias "Robbie Stewart." SOI-3 communicates with ASHUTOSH VAISH via WhatsApp, email, and phone numbers listed below:

- **(202) 921-0123**
- **(202) 753-9708**
- **+91-7054210000**
- **+91-8765919198**
- **+91-9044971271**
- **robbiestewarts1909@gmail.com**
- **stewartsrobbie@gmail.com**

- **r.stewarts121514@gmail.com**

- **contact.r.stewarts@protonmail.com**

- **r.stewarts@protonmail.ch**

SOI-3 stated that communication at all of these email addresses and phone numbers included conversations about the drug conspiracy, specifically drug orders, processing payments, and movement of drug proceeds.

      42.     SOI-3 communicates with NICOLAS BIGNONE via WhatsApp and email listed below:

- **+54-911 36594384**

- **+90-5368406561**

- **nick23904@gmail.com**

SOI-3 stated communication at the email address and phone numbers via WhatsApp, included conversations about the drug conspiracy, creation of the websites, payments for drug purchases, creation of a business for opening domestic bank accounts, and movement of drug proceeds. SOI-3 stated that NICOLAS BIGNONE also emailed SOI-3 an image of his passport and a utility bill to assist with creating the business. NICOLAS BIGNONE messages SOI-3 personal photographs of himself traveling to various countries. SOI-3 provided case agents with these documents and some photographs of NICOLAS BIGNONE which were sent to SOI-3 via both WhatsApp phone numbers.

      43.     On January 16, 2021, case agents communicated with ADDISON via WhatsApp at phone number **+44-7490620584** to conduct a controlled purchase of 500 tablets of Adderall 30mg (suspected to contain methamphetamine) and 500 tablets of Percocet 10mg (suspected to contain methamphetamine, heroin, tramadol, and caffeine). Case agents and ADDISON discussed pricing

and quantity, and ADDISON said the minimum shipment that the shipper will ship is 1,000 tablets. ADDISON provided case agents with a Bitcoin address where payment should be sent. Case agents did send Bitcoins worth approximately $3,100 to the target Bitcoin address, and ADDISON confirmed that the payment was received. Case agents have discussed this drug purchase further with ADDISON, and the drug parcel has not been received yet. The entire conversation with ADDISON was conducted by communicating via WhatsApp account linked to phone number **+44-7490620584.**

44. On January 16, 2021, case agents communicated with PREMIER MEDICAL AGENCY and AKSHAY SAKODE via email at **pmagencysales@gmail.com** and via WhatsApp phone number **+91-7304096699**. Case agents inquired about the availability of specific controlled substances and received a message back from WhatsApp phone number **+91-7304096699** and email address **pmagencysales@gmail.com.** The email included an email signature and contact information for further discussion. The email signature listed two domains for the two PREMIER MEDICAL AGENCY online pharmacy websites. Furthermore, the email signature provided phone number **+91-9356460394** to be contacted directly via phone or by Telegram, WhatsApp, or Signal regarding PREMIER MEDICAL AGENCY. Case agents reviewed the two online pharmacy websites, and one of the websites has the phone number **+91-9356460394** to be contacted for business with PREMIER MEDICAL AGENCY.

45. On January 11, 2021, case agents conducted an undercover purchase from PILL2DAYS via the telephone number (202) 753-9072, which is published on the website. Case agents purchased 180 tablets of hydrocodone 10mg (a Schedule II controlled substance) and 180 tablets of tapentadol 100mg (a Schedule II controlled substance). In connection with the purchase, case agents were directed, via text message, to conduct a bank transfer by Zelle to a bank account

linked to the email address **kmahaney1909@gmail.com** and name "Katie." Case agents are aware Katherine "Katie" Mahaney, is a payment processor for the PILLS2DAYS pharmacy and drug conspiracy. Case agents were sent the tracking number for the tapentadol parcel by text message and by email from **r.stewarts121514@gmail.com**. This email contained an email signature "Robbie Stewart – Sales Manager." Case agents received the shipment of the 180 tablets of suspected tapentadol 100mg in blister packs, which were shipped from South Carolina, and the shipment of the 180 tablets of suspected hydrocodone 10mg, which was shipped from Vermont. The substances were sent to the DEA laboratory in Chicago, and the analysis results are pending.

46.    During the January 11, 2021 controlled purchase, the undercover case agent was asked by the PILL2DAYS customer representative to receive a future parcel containing 400 tablets of tramadol (a Schedule IV controlled substance) and reship it to another yet to be identified customer in the United States.  The undercover agreed to do this, and the PILL2DAYS employee said the parcel would be shipped in the near future.  Furthermore, the undercover received a piece of mail containing the same Vermont return address that the hydrocodone drug parcel displayed. This envelope contained two sample suspected hydrocodone tablets, as well as a letter, stating the composer's name is "Ricky."  The letter said Ricky has shipped drugs in the past for this drug conspiracy, and he is soliciting customers of his own.  The letter displayed his contact information as the following:

- Email: **saferxforyou@gmail.com**
- Phone: (202) 858-4068

47.    Case agents know a PILL2DAYS employee using the name "Ricky" processed an order from SOI-1 and SOI-2.  Case agents also know that PILL2DAYS's co-conspirators commonly use phone numbers with the area code "202."

48. Case agents sent a text message to "Ricky" at phone number (202) 858-4068, who confirmed he mailed the undercover two sample hydrocodone tablets. Ricky offered to sell the undercover the same types of controlled pharmaceuticals offered by PILL2DAYS. Ricky emailed the undercover a drug and pricing list from email address **saferxforyou@gmail.com**.

49. Case agents believe that SOI-1 is a reliable witness as SOI-1 has provided a statement against SOI-1's own penal interest, and information provided by SOI-1 has been independently corroborated by case agents. SOI-1's criminal history consists of misdemeanor assault and misdemeanor menacing. SOI-1 has no prior felony convictions. SOI-1 has provided information in other investigations, and that information was found to be accurate and reliable. SOI-1 is cooperating with law enforcement for potential consideration for his federal felony drug distribution arrest, which remains pending.

50. Case agents believe that SOI-2 is a reliable witness as SOI-2 has provided a statement against SOI-2's own penal interest, and information provided by SOI-2 has been independently corroborated by case agents. SOI-2's criminal history consists of one prior federal felony conviction for conspiracy to commit health care fraud, mail and wire fraud, money laundering, and illegal monetary transaction, conspiracy to distribute controlled substances, and mail fraud. SOI-2 may have been arrested for forgery in the 1980s. SOI-2 has provided information in other investigations, and that information was found to be accurate and reliable. SOI-2 is cooperating with law enforcement for potential consideration in his new federal felony drug conspiracy and drug distribution case, and any revocation sentence for his supervised release in the prior case.

51. Case agents believe that SOI-3 is a reliable witness as SOI-3 has provided a statement against SOI-3's own penal interest, and information provided by SOI-3 has been

independently corroborated by case agents. SOI-3's criminal history consists of one federal arrest from this investigation. SOI-3 has no prior felony convictions. SOI-3 has provided information in other investigations, and that information was found to be accurate and reliable. SOI-3 is cooperating with law enforcement for potential consideration for his federal felony fraud arrest from this investigation, which remains pending.

52.    Based on my training and experience and the facts described herein, I believe BUYETIZOLAM, PREMIER MEDICAL AGENCY, PILL2DAYS, and DAVE ADDISON JR. are trafficking drugs by shipping controlled pharmaceuticals from overseas to the United States. The drugs are either shipped directly to the customers or re-shipped to customers by drug re-shippers in the United States. Co-conspirators in the United States are also operating as payment processors to facilitate the drug payments. Based on my training and experience and the facts set forth above, I believe that records and information related to the email addresses **pmagencysales@gmail.com,** **tinuschicken@gmail.com,** **kevinvanderhulst@gmail.com,** **r.stewarts121514@gmail.com,** **robbiestewarts1909@gmail.com,** **stewartsrobbie@gmail.com,** **nick23904@gmail.com,** and **saferxforyou@gmail.com** will contain evidence of these crimes.

53.    I know from my training and experience that email records, including email content, often provide details that enable law enforcement to identify the user of the email account and identify his or her location. In this case, the identification of the user of the email account will assist case agents in identifying the true identity and location of the person(s) having control over the email accounts, identification of co-conspirators, financial accounts, the identification of drug suppliers and shippers, identification of customers, and the details revolving around the payment processing of drug purchases.

54.     I also know that persons involved with owning or operating internet pharmacies and providing the drugs for such internet pharmacies often times communicate by email, which is consistent with the evidence in this investigation. These communications include but are not limited to drug orders, drug shipping information, and payments for said drugs. In this investigation specifically, I have had the opportunity to review email account records, including email content, belonging to multiple members of this conspiracy, which were obtained pursuant to federal search warrants and consent. Based on the review of these records, from speaking to customers, by conducting undercover controlled buys, and speaking with cooperating co-conspirators, I know that email is a primary form of communication for this drug conspiracy. Most commonly, customers place their orders by email or by internet pharmacy website. Internet pharmacy representatives and payment processors communicate with the customers by email regarding payment and drug order. The internet pharmacy representative then emails the orders to the internet pharmacy employee responsible for forwarding the orders to the source of supply. After the source of supply ships the drugs to the customer(s), an email is commonly sent by the source of supply to the internet pharmacy representative documenting that the order was shipped and the tracking number. The tracking number is emailed to the customer, upon the drug parcel being shipped. In addition, the co-conspirators communicate with one another by email and phone.

55.     As described above, SOI-1 also discussed how SOI-1 and LETTINGA maintained a shared Excel spreadsheet file containing all drug payments processed by SOI-1 for BUYETIZOLAM and COMPRATAPENTADOL, and saved this Excel file in Google Drive. This is consistent with my prior investigations and training and experience of internet pharmacies, in that internet pharmacies and drug conspiracy often use Google Drive (and other electronic cloud storage platforms) to store records and information about the conspiracy's financial accounts, drug

suppliers, drug shippers, drug customers, drug shipments, and payment processing. Based on my prior investigations and training and experience, internet pharmacies and drug conspiracies, who use the Google platform, will often communicate internally and externally using Google Hangout or other Google chats about the means, manner, and methods of the conspiracy.

56.     For all of the foregoing reasons, case agents are requesting a search warrant for emails containing the information set forth in Attachment A for the following: **pmagencysales@gmail.com, tinuschicken@gmail.com, and kevinvanderhulst@gmail.com** for the period of June 28, 2018 to the present and **r.stewarts121514@gmail.com, robbiestewarts1909@gmail.com, stewartsrobbie@gmail.com, nick23904@gmail.com,** and **saferxforyou@gmail.com** for the period of January 1, 2015 to the present. These beginning dates are the dates that case agents are aware these internet pharmacies and drug conspiracies were in operation, and it's believed evidence will be located specific to each email address.

## BACKGROUND CONCERNING GOOGLE

57.     In my training and experience, I have learned that Google provides a variety of online services, including electronic mail ("email") access, to the public. Google allows subscribers to obtain a free email account at the domain name gmail.com like the accounts listed in Attachment A. Subscribers obtain an account by registering with Google. During the registration process, Google asks subscribers to provide basic personal information. Therefore, the computers of Google are likely to contain stored electronic communications (including retrieved and unretrieved email) and information concerning subscribers and their use of Google services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence

of the crimes under investigation because the information can be used to identify the account's user or users.

58.      In general, an e-mail that is sent to a Google subscriber is stored in the subscriber's "mailbox" on Google's servers until the subscriber deletes the e-mail.  If the subscriber does not delete the message, the message can remain on Google's servers indefinitely. Even if the subscriber deletes the e-mail, it may continue to be available on Google's servers for a certain period.

59.      A Google subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Google.  In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

60.      In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account.  Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.  Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

61.      In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (i.e.,

session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

62. In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user because of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

63. In addition to email, Google offers its users a number of other online services. A list of those services and their feature is available at the following URL: https://support.google.com/.

64. One of the services Google offers is Google Drive. Google Drive is a file storage and file sharing application that allows its users to share access to the content of files by sending a URL to others. According to information available from Google, Google stores the content of those files on their servers. In my training and experience, information stored on Google Drive

may constitute evidence of the crimes under investigation because the information may include records of illicit transactions, payment ledgers, and similar documents.

65.     In my training and experience, and publicly available information from Google, I know that Google uses cookies and similar technology to collect information about its users, including to identify a user's device and browser version.  Google also states that it uses "technologies" to determine a user's actual location. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users and their locations.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

66.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A), and 2713 by using the warrant to require Google to disclose to the government copies of the records and other information (including the content of communications) described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

67.     Pursuant to 18 U.S.C. § 2713, this application seeks a warrant to search all responsive records and information under the control of Google, a provider subject to the jurisdiction of this court, regardless of where Google has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Google's possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.

## <u>CONCLUSION</u>

68.     Based on the information described above, I request that the Court issue the proposed search warrant for the accounts listed in Attachment A.  Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

69.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

70.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

**ATTACHMENT A**

**Matter No. 2020R00481**

**Property to Be Searched**

This warrant applies to information associated with the following email addresses and for the following periods, that are stored at premises controlled by Google, a company that accepts service of legal process at 1600 Amphitheatre Parkway in Mountain View, California.

1. **pmagencysales@gmail.com** (from June 28, 2018 to present)

2. **tinuschicken@gmail.com** (from June 28, 2018 to present)

3. **kevinvanderhulst@gmail.com** (from June 28, 2018 to present)

4. **r.stewarts121514@gmail.com** (from January 1, 2015 to present)

5. **robbiestewarts1909@gmail.com** (from January 1, 2015 to present)

6. **stewartsrobbie@gmail.com** (from January 1, 2015 to present)

7. **nick23904@gmail.com** (from January 1, 2015 to present)

8. **saferxforyou@gmail.com** (from January 1, 2015 to present)

## <u>ATTACHMENT B</u>

**Particular Things to be Disclosed and Seized**

**I.        Information to be disclosed by Google (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each of the accounts or identifiers listed in Attachment A:

a.        All customer information (e.g. name, age, email address, physical address, payment information, telephone numbers) associated with the account;

b.        All records and information regarding the creation of the account and access to the account, including records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, and log-in IP addresses associated with session times and dates.

c.        The types of services utilized;

d.        The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

e.        The contents of all Google Hangout, or other Google chats, associated with the account, including stored or preserved copies of chat conversations sent to and from the account,

the source and destination user associated with each conversation, and the date and time at which each message was sent;

f.  All records, files, and other information stored/saved in the accounts, including information, files, and data saved to Google Drive;

g.  A complete file activity log for any associated Google Drive account;

h.  All records and information and analytics collected by the Provider through the use of cookies or similar technology including the type of browser and device used by the account holder to access the account, the web page visited before coming to Google sites, and other identifiers associated with the devices used by the account holder;

i.  All records and information that identifies a user's actual location;

j.  All records pertaining to communications between the Provider and any person regarding the accounts, including contacts with support services and records of actions taken;

k.  All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Google.

The Provider is hereby ordered to disclose the above information to the government within 14 days of the issuance of the warrant.

**II.     Information to be seized by the government**

All information described above in Section I that constitutes evidence and instrumentalities related to violations of Title 21, United States Code, Sections 846, 841(a)(1), 841(h), and 843(c)(2)(A), including but not limited to:

a.     The sale and distribution of controlled substances;

b.     The exchange or laundering of funds related to the sale and distribution of controlled substances;

c.     Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

d.     Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

e.     The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s)

f.     Other accounts used by the persons using the account;

g.     The devices used to access the account;

h.     The identity of the person(s) who communicated with the account about matters relating to the sale and distribution of controlled substances, including records that help reveal their whereabouts;

i.     The identity of persons sharing Google Drive account URLs associated with the account and related to the sale and distribution of controlled substances;

j.      The identity of persons saving, storing, editing, and accessing files and records on Google Drive accounts associated with the account and related to the sale and distribution of controlled substances;

k.      Financial information, credit card numbers, social security numbers, and other personal identifiable information stored on/in Google Drive account; and

l.      Communications and files that contain IP addresses and username and passwords to those IP addresses.